# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| DESHAWN BURGESS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No.: 2:21-cv-01319-JHE |
| AMERICAN LUMBER, INC., et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER[1]

This is a personal injury case. Plaintiff Deshawn Burgess ("Burgess") seeks to recover for an injury suffered while working on a conveyor system at a facility owned and operated by Defendant American Lumber, Inc. ("American Lumber"). (*See* doc. 1-1 at 5-10; doc. 16). Burgess initially filed this action in the Circuit Court of Jefferson County, Alabama (*see* doc. 1-1), but American Lumber removed it to this court.[2] (Doc. 1). Burgess now moves to remand. (Doc. 12). American Lumber opposes that motion (doc. 21), and Burgess has filed a reply in support of remand. (Doc. 29). Burgess also moves for sanctions due to American Lumber's failure to provide

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 26).

[2] There has been some previous confusion about the identity of the defendant or defendants in this case. American Lumber, the only defendant named in the original complaint, stated in its notice of removal that it is simply a trade name for American Trade Group, Inc. ("ATG"). (*See* doc. 1). Almost immediately, Burgess amended his complaint to add ATG as a defendant. (Doc. 4). Although the same counsel represents both defendants, counsel did not appear for ATG until December 7, 2021, when both defendants answered the second amended complaint (discussed further below). (Doc. 25).

expedited discovery responses. (Doc. 19). American Lumber opposes that motion as well. (Doc. 23).

On June 22, 2022, the undersigned heard argument from the parties concerning the motion to remand. The undersigned has considered the arguments raised by the parties in their briefing and at the hearing. As discussed further below, the motion for sanctions is **DENIED**, and the motion to remand is **GRANTED IN PART** and **DENIED IN PART**.

## I. Background

### A. Facts

According to the original complaint, on November 11, 2019, Burgess was working on behalf of his employer, Tuscaloosa Lumber Remanufacturing ("TLR"), at the American Lumber Facility in Birmingham, Alabama. (Doc. 1-1 at 6, ¶ 8). Burgess was assigned to work in an area where wood moves down a conveyor to an area where a piece of equipment cuts the wood. (*Id.*, ¶ 9). Burgess alleges the conveyor system was not properly guarded to protect users from nip and sheer points, causing his left hand to be caught in an unprotected nip point and pulled into the conveyor system. (*Id.* at 7, ¶¶ 10-12). Burgess was able to pull his hand out, but he was injured in the process and sought medical care. (*Id.*, ¶¶ 13-14). Burgess sued American Lumber and a number of fictitious defendants on various negligence theories, seeking only compensatory damages, interest, and costs. (*Id.* at 7-10). The complaint does not contain an *ad damnum* clause. (*See id.*).

Attached to its response to the motion to remand, American Lumber has provided photographs from Burgess's Facebook page showing the injury to his fingertip. (Docs. 21-1 & 21-2). These photographs show blood and exposed bone. (*Id.*). American Lumber has also

included a document from Burgess's medical records showing Burgess's fingertip was amputated. (Doc. 21-3).[3]

### B. Procedural History

On October 1, 2021, American Lumber removed this case from the Circuit Court of Jefferson County, Alabama, to this court. (Doc. 1). Burgess amended his complaint on October 8, 2021. (Doc. 4). The same day, citing the impending November 11, 2021 statute of limitations, Burgess moved for expedited discovery to determine whether additional defendants should be added. (Doc. 5). The undersigned set a deadline for that motion (doc. 6) and, receiving no opposition, granted it (doc. 7). In a subsequent text order, the undersigned set a November 8, 2021 deadline for American Lumber's responses to Burgess's discovery. (Doc. 11).

On November 11, 2021, Burgess filed his second amended complaint. Six days later, he moved for sanctions against American Lumber, arguing American Lumber failed to provide responses to his discovery requests. (Doc. 19). On December 1, 2021, American Lumber responded to the motion for sanctions. (Doc. 23)

## II. Analysis

### C. Motion for Sanctions

Burgess argues American Lumber failed to provide executed responses to his expedited discovery. (Doc. 19). Burgess attaches a November 9, 2021 email from his counsel to American Lumber's counsel in which Burgess inquired about discovery responses. (Doc. 19-3). Burgess states American Lumber's counsel did not respond to this email. He states his counsel did not

---

[3] American Lumber states this document includes Burgess's self-report on November 13, 2019, that his pain was 10/10. (Doc. 21 at 10). The attachment does not appear to contain this report.

3

confer with opposing counsel prior to filing the motion for sanctions because the purpose of obtaining the expedited discovery—i.e., obtaining the information prior to the expiration of the statute of limitations—has been completely frustrated and cannot now be resolved. (Doc. 19 at 3). Burgess points to the list of sanctions available in Federal Rule of Civil Procedure 37(b)(2)(A), without specifically requesting any of them. (*Id.*). Burgess also requests reasonable fees and expenses. (*Id.* at 4).

Federal Rule of Civil Procedure 37(b)(2)(A) provides that when a party fails to obey a court's discovery order, a court may sanction the party in a variety of ways:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

FED. R. CIV. P. 37(b)(2)(A).

> Numerous factors are relevant to a district court's exercise of its broad discretion to order sanctions under Rule 37, including: (1) the willfulness of the noncompliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance. In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general.

4

*Fossil Industries, Inc. v. Onyx Specialty Papers, Inc.*, 302 F.R.D. 288, 294 (E.D.N.Y. 2014) (citation omitted).

American Lumber argues Burgess's motion should be denied because he failed to meet and confer prior to filing it, which is a prerequisite to moving for sanctions in the undersigned's initial order. (Doc. 23 at 1). This is a nonstarter; the undersigned's initial order containing that requirement (doc. 27) had not been entered at the time of the relevant events here because the parties had not yet consented to magistrate judge jurisdiction. That said, having reviewed the parties' briefs and supporting documentation, the undersigned cannot conclude sanctions are warranted here. First, contrary to the implication of Burgess's motion, the parties appear to have communicated extensively and exchanged information about the content of the discovery responses. Although American Lumber acknowledges it did not provide executed discovery responses by the November 8, 2021 deadline, it states its counsel communicated with Burgess's counsel. (*Id.* at 1-4). This communication (attached to the response) included (1) an October 8, 2021 email acknowledging the motion for expedited discovery and offering to "work with [counsel] anyway I can as quickly as I can to help [counsel] identify" the machine's manufacturer (*id.* at 2-3; doc. 23-2); (2) an October 18, 2021 email indicating counsel would respond as soon as possible (doc. 23 at 3; doc. 23-5); and (3) a November 2, 2021 email stating that American Lumber was working on its responses but providing Burgess with American Lumber's belief that the manufacturer of the machine was Newman Machine Company, Inc., to give Burgess "a few extra days to investigate," to which it says Burgess never responded (doc. 23 at 2; doc. 23-1).

Second, although American Lumber failed to provide discovery responses prior to the expiration of the statute of limitations, Burgess's motion fails to identify any actual prejudice from that failure, particularly since he was aware of the likely identity of the machine's manufacturer in

5

advance of the statute of limitations and declined to name that entity in the second amended complaint. American Lumber also states it offered to arrange a facility inspection and an inspection of the machine, but Burgess declined, stating he had already inspected it. (Doc. 23 at 3). American Lumber notes the entirety of the information sought in Burgess's discovery requests is in the possession of his former employer, TLR, and that it communicated extensively with TLR's local counsel to obtain his assistance in preparing discovery responses rather than simply direct Burgess's counsel to obtain discovery directly from TLR. (*Id.* at 3-4; doc. 23-3).

Several other reasons suggest sanctions are not warranted here. Burgess could have filed his motion on November 9, 2021—the day the discovery responses were overdue—which would have allowed the undersigned to set an expedited hearing on the motion to attempt to resolve the matter prior to the expiration of the statute of limitations. Additionally, the undersigned finds that none of the factors in *Fossil Industries* support sanctions in light of the purposes identified in that case.[4] In particular, as American Lumber points out, it derives no apparent benefit from the absence of additional defendants, including the machine's manufacturer. (*See* doc. 23 at 4). Finally, Burgess identifies no specific relief he believes is appropriate in this case beyond monetary sanctions, which the undersigned finds are also not appropriate. Therefore, the motion for sanctions (doc. 19) is due to be denied.

---

[4] Again, those factors are (1) the willfulness of the noncompliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance; they are geared towards (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general. *Fossil Industries*, 302 F.R.D. at 294.

### D. Motion to Remand

A defendant may remove an action initially filed in state court to federal court if the action is one over which the federal court has original jurisdiction. 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Relevant here, federal jurisdiction exists if there is complete diversity between the parties and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332(a)(1); *Sweet Pea Marine, Ltd. V. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005). If removal is based on diversity of citizenship, the removing defendant has the burden of demonstrating both complete diversity and the amount in controversy. *See* 28 U.S.C. § 1332(a); *Pretka v. Kolter City Plaza II, Inc.,* 608 F.3d 744, 752 (11th Cir. 2010); *Dudley v. Eli Lilly and Co.*, 778 F.3d 909, 913 (11th Cir. 2014). The "statutory procedures for removal are to be strictly construed." *Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 32 (2002). Any doubts are resolved in favor of remand. *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).

Where a defendant's notice of removal makes a good-faith claim asserting the amount in controversy, his "allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014). However, when a defendant's amount in controversy allegation is "contested by the plaintiff or questioned by the court," then "both [plaintiff and defendant] submit proof and the court decides, by a preponderance of the evidence, whether the amount in controversy requirement has been satisfied." *Id.* at 88. The court must find it is "more likely than not" that the plaintiff could recover more than $75,000 from the defendant for diversity jurisdiction to exist. *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010).

When a complaint (such as the one in this case) does not request a specific amount of damages, removal is proper if it is facially apparent from the complaint that the amount in

controversy exceeds the jurisdictional requirement. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 752 (11th Cir. 2010). In this assessment, the district court "need not suspend reality or shelve common sense." *Roe v. Michelin North America, Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010). Instead, this court may use "reasonable deductions, reasonable inferences, or other reasonable extrapolations from the pleadings to determine whether it is facially apparent that the case is removable." *Id.* The court is not "bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought." *Id.* Furthermore, the court must consider a request for and availability of punitive damages unless it is apparent to a legal certainty that such cannot be recovered. *See, e.g., Holley Equip. Co. v. Credit Alliance Corp.*, 821 F.2d 1531, 1535 (11th Cir. 1987); *Mitchell v. Carrington Mort. Serv.*, L.L.C., Case No. 5:16-cv-00833-CLS, 2016 WL 3570373, *3 (N.D. Ala. July 1, 2016).

In its notice of removal, American Lumber states it (as a trade name of American Trade Group) is a citizen of Texas, while Burgess is a citizen of Alabama. (Doc. 1 at 2-3). Despite the fact that there is no *ad damnum* clause in the complaint, American Lumber contends it is facially apparent that the amount in controversy exceeds $75,000 because of the "serious allegations of personal injury to [Burgess's] hand resulting from an industrial accident," which it states on information and belief "resulted in an amputation." (*Id.* at 4-5). There appears to be no dispute between the parties as to citizenship, so the only question is whether American Lumber has met its burden to show that, more likely than not, the amount in controversy exceeds $75,000.

In his motion to remand, Burgess contests that the amount in controversy is apparent from the face of the complaint, which is the only evidence referenced in the notice of removal. (Doc. 12 at 6-7). Burgess points out that the complaint itself alleges only negligence theories and seeks only compensatory damages, and that despite American Lumber's reference to its belief that the

8

injury resulted in an amputation the complaint itself does not disclose the extent of Burgess's injury or the nature of the care he sought. (*Id.*). In response, American Lumber contends the amount in controversy *is* apparent from the face of the complaint, pointing to the following two aspects: (1) the complaint alleges Burgess was injured in an industrial accident; (2) the complaint seeks recovery for "physical injury, mental anguish, pain and suffering, and further alleges loss of quality of life," and juries are entitled to broad discretion in awarding such damages. (Doc. 21 at 5-8).

Burgess has the better argument. Although American Lumber is correct that the complaint describes an industrial accident and lists categories of damages, there is no reason to conclude that either the worksite where Burgess was injured or the general categories of "physical injury," "pain and suffering," "mental anguish," and "loss of quality of life" satisfy the jurisdictional amount. American Lumber offers no analysis of why it would matter that Burgess was injured in an industrial accident, simply reciting the complaint's allegations. (Doc. 21 at 6-7). And Eleventh Circuit precedent squarely refutes its latter argument. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1318 (11th Cir. 2001) (jurisdictional amount not established when plaintiff, who tripped over a curb, alleged she suffered "permanent physical and mental injuries . . . substantial medical expenses . . . lost wages . . . [and] a diminished earning capacity," would continue to experience these losses indefinitely, and sought "general damages, special damages, and punitive damages in unspecified amounts."). *See also Fox v. Winn-Dixie Montgomery, LLC*, No. 21-00306-CG-B, 2021 WL 4484564, at *5 (S.D. Ala. Sept. 13, 2021) ("merely listing categories of damages does not satisfy a removing defendant's burden of establishing the requisite amount in controversy."). Nor is it relevant that a jury *could* award more than $75,000 for these general categories of damages; otherwise, every case alleging them would be removable, irrespective of the actual injury at issue. Additionally, while American Lumber indicates its belief that the accident resulted in an

9

amputation, the face of complaint is silent as to the nature of the injury and its treatment. The only way to conclude the complaint is removable on its face would be to speculate as to the extent of the injury and the damages sought for it, which the Eleventh Circuit has specifically forbidden. *Pretka*, 608 F.3d at 753-54.

That said, removing defendants are entitled to submit evidence after removal concerning the jurisdictional facts that existed at the time of removal. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000). American Lumber argues even if the face of the complaint does not reveal the amount in controversy, the evidence it has attached to its response fills in the gaps in the complaint to show the severity of Burgess's injury and how it was treated. (Doc. 21 at 8-10). American Lumber contends this evidence demonstrates the amount in controversy exceeds $75,000. (*Id.*).

American Lumber is correct that its evidence clarifies the complaint's ambiguous allegations. The Facebook photographs depict in somewhat gruesome detail a serious injury to Burgess's finger, complete with blood and exposed bone. And, supporting American Lumber's contention in its notice of removal, the medical records reveal Burgess's fingertip was amputated: a considerably more extreme form of treatment than the ambiguous "medical care" in the complaint. The problem with American Lumber's approach is that there is nothing obvious about a complaint seeking to recover compensatory damages for a partially-amputated finger that could lead a court to reason, and not simply speculate, that more than $75,000 is at stake. Indeed, district courts in this circuit have repeatedly declined to find a digital amputation necessarily means the jurisdictional amount is met. *See Beverly v. Sunbelt Rentals, Inc.,* No. 3:22-CV-16-MMH-LLL, 2022 WL 766225, at *1 (M.D. Fla. Mar. 14, 2022) (right ring finger); *Blount v. Coe Manufacturing Co.*, No. CV 20-0182-WS-N, 2020 WL 1866190, at *1 (S.D. Ala. Apr. 14, 2020) (portion of right

ring finger);[5] *Ragle v. Black & Decker (U.S.) Inc.*, No. 8:19-CV-1259-T-33TGW, 2019 WL 2521847, at *1 (M.D. Fla. June 19, 2019) (middle finger to first knuckle); *Payne v. J.B. Hunt Transp., Inc.*, 154 F. Supp. 3d 1310, 1313 (M.D. Fla. 2016) (left hallux (big toe));[6] *Jennings v. Powermatic*, No. 3:13-CV-921-J-32JBT, 2013 WL 6017313, at *1 (M.D. Fla. Nov. 13, 2013) (right index finger). The undersigned has not located a decision from a court in this circuit drawing a contrary conclusion. This is not dispositive, of course, but the absence of any dissent among the district courts is probative of what common sense dictates. *See Roe*, 613 F.3d at 1062. And since American Lumber offers no evidence to support the value of damages for a digital amputation in general or Burgess's injury specifically, the undersigned sees no reason to depart from this consensus.

American Lumber adds one additional fact to the calculus. American Lumber offered Burgess a proposed stipulation to sign indicating he would not seek or accept an award exceeding $75,000. (Doc. 21-4). Burgess has not executed that stipulation. "Where a defendant does not

---

[5] In *Blount*, the plaintiff also sought punitive damages, which are not at issue here.

[6] The *Payne* court held that the complaint's allegations of "severe injuries . . . including a left hallux amputation," standing alone, were insufficient to meet the defendant's burden to demonstrate jurisdiction. 1154 F. Supp. 3d at 1313-14. However, it ultimately denied the plaintiff's motion to remand based on the defendant's submission of "trial verdicts and settlements from cases alleging similar injuries to those sustained by Plaintiff where the amount in controversy exceeded the jurisdictional threshold." *Id.* at 1314. Other courts, including the Eleventh Circuit, have found such evidence unpersuasive or immaterial when unconnected to specific factual similarities between the cases. *See, e.g., Federated Mutual Insurance Co. v. McKinnon Motors, LLC*, 329 F.3d 805 (11th Cir. 2003) ("mere citation to what has happened in the past does nothing to overcome" indeterminate and speculative claims); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1221 (11th Cir. 2007) (questioning the relevance of "such general evidence . . . in establishing the value of claims in any one particular suit" and requiring "specific detail" about the removed action and the cited case); *Beverly*, 2022 WL 766225, at *3; *Blount*, 2020 WL 1866190 at *2-3. It is beside the point whether the undersigned would find similar evidence persuasive here, since American Lumber has not submitted any.

rely exclusively on a refusal to stipulate to substantiate all his or her argument, a court may consider such a refusal in making its decision on whether to remand the case." *Sullins v. Moreland*, 511 F. Supp. 3d 1220, 1229 (M.D. Ala. 2021) (citation omitted). That said, the Eleventh Circuit has also noted that "[t]here are several reasons why a plaintiff would not so stipulate, and a refusal to stipulate standing alone does not satisfy [the defendant]'s burden of proof on the jurisdictional issue." *Williams*, 269 F.3d at 1320. Burgess points out that the stipulation applies to "current and future parties" and that American Lumber's counsel sent it prior to discovery being conducted. (Doc. 29 at 6-7). These concerns are not unreasonable and do not necessarily point to the conclusion that the amount in controversy is over $75,000. Nevertheless, the undersigned finds Burgess's refusal to stipulate does weigh slightly against remand.

Even added to the remainder of the evidence, though, Burgess's refusal to stipulate fails to tip the scales towards the existence of diversity jurisdiction. American Lumber contends the evidence is all on its side, and there is no contrary evidence. (Doc. 21 at 13). But American Lumber bears the burden of persuading the court that the evidence it has produced demonstrates jurisdiction exists. *See Pacheco de Perez v. AT & T Co.*, 139 F.3d 1368, 1373 (11th Cir. 1998). As stated above, apart from Burgess's failure to execute the stipulation, the evidence American Lumber has supplied supports the nature of Burgess's injury and the treatment he received for it, but nothing more that would clarify the amount in controversy.

Further, the undersigned declines to take American Lumber up on its request for leave to conduct additional jurisdictional discovery, including serving requests for admission concerning the jurisdictional amount. (Doc. 21 at 12-13). Specifically, American Lumber seeks to require Burgess to answer the following: "Admit that the plaintiff, Deshawn Burgess, will neither seek nor accept an amount greater than $74,999.99 in this lawsuit including both compensatory and punitive

12

or exemplary damages against all named and fictitious defendants." (*Id.* at 13). As American Lumber acknowledged at the hearing, this request for admission would not add much more to the calculus than Burgess's refusal to sign the stipulation and would still not relieve the court of the need to speculate concerning Burgess's damages. Apart from the request for admission, American Lumber has not described with any specificity what discovery it seeks, either in its brief or at the hearing. Instead, it has asked generally to probe into Burgess's level of pain and suffering and the effects of his permanent injury. Regardless of whether jurisdictional discovery is available in the abstract,[7] this type of wide-ranging discovery is not warranted given the weakness of American Lumber's current showing that federal jurisdiction exists. Therefore, because American Lumber has failed to meet its burden to demonstrate the amount in controversy exceeds the jurisdictional amount, this case is due to be remanded.

In addition to remand, Burgess also requests attorney fees. (Doc. 12 at 10-12). Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any

---

[7] As discussed during the June 22, 2022 hearing, the parties dispute whether jurisdictional discovery is available at all given the Eleventh Circuit's decision in *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007). In *Lowery*, a Class Action Fairness Act ("CAFA") case, the Eleventh Circuit held that "[p]ost-removal discovery for the purpose of establishing jurisdiction in diversity cases cannot be squared with the delicate balance struck by Federal Rules of Civil Procedure 8(a) and 11 and the policy and assumptions that flow from and underlie them." *Id.* at 1215. American Lumber contends *Lowery* predates and was implicitly abrogated by the Federal Court Jurisdiction and Venue Act of 2011, citing the House Judiciary Committee Report to that Act indicating "discovery may be taken with regard" to whether the jurisdictional threshold has been met. (Doc. 21 at 11-12). American Lumber also argued at the hearing that <u>Lowery is distinguishable because it was a CAFA case</u>. As another court has recently observed, "[p]ost-removal jurisdictional discovery remains debatable." *See Macon v. Alabama CVS Pharmacy, L.L.C.*, No. 3:21-CV-724-KFP, 2022 WL 1129641, at *5 (M.D. Ala. Apr. 15, 2022) (collecting cases postdating *Lowery* allowing and denying jurisdictional discovery). It is not necessary to decide whether *Lowery's* prohibition against post-removal discovery is still binding given the undersigned's conclusion below.

actual expenses, including attorney fees, incurred as a result of the removal." "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). However, it is not necessary that a plaintiff show the defendant's position was "frivolous, unreasonable, or without foundation." *Id.* at 138-39.

Although not cited by American Lumber, other courts have noted that, under particular circumstances not obviously at issue in this case, juries can award verdicts in excess of $75,000 in finger amputation cases. *See Blount*, 2020 WL 1866190 at *4 (noting defendant submitted four Alabama cases with jury verdicts exceeding $75,000); *Beverly*, 2022 WL 766225 at *3 (discussing Florida cases). It does not appear that American Lumber removed this case to waste time and resources, as Burgess alleges. (Doc. 12 at 12). While American Lumber's removal was not well taken, it would not be appropriate to award attorney fees here. Therefore, to the extent it requests attorney fees, Burgess's motion is due to be denied

### III. Conclusion

For the reasons discussed above, Burgess's motion for sanctions (doc. 29) is **DENIED**. Burgess's motion to remand is **GRANTED IN PART** to the extent that this case is due to be **REMANDED** to the Circuit Court of Jefferson County, Alabama, but **DENIED** as to Burgess's request for attorney fees. A separate order will be entered.

DONE this 24th day of June, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE